The next case for argument, United States v. Shaquille Carter, 21-1005 Mr. Johnson, whenever you're ready. May it please the court, my name is Barclay Johnson. I'm with the Federal Defender's Office in Vermont and I'm pleased to be here on behalf of Shaquille Carter. The only issue at trial, only issues at trial were which of the three truck occupants possessed the drugs and whether the drugs were personal use quantities. The district court excluded highly relevant information that answered the basic question, if it wasn't Shaquille Carter who possessed the drugs, who was it? The excluded information here was DEA Task Force Officer Matat's personnel file, which documented his dismissal from the police force for repeatedly using the N-word and for pending criminal charges and for drug convictions for Neil Schicittano, who supplied the truck, was one of the three passengers. He wasn't a witness, right, Matat? Matat was not a witness. Neil Schicittano was not a witness. So the purpose of introducing the derogatory reports about him was for what reason? That he was targeting your client as opposed to the other two? I want to know. It seems unusual to produce derogatory information about a person whose credibility is not an issue in the case. So his personnel file was basic substantive evidence that supported Carter's theory that the drugs weren't his. It helps answer the question, if they weren't his, if they weren't Carter's, whose were they? And in the language of Rule 401, it's relevant because it has a tendency to make any fact more or less probable than it would have been without it. So here, the first basic element that the jury has to decide is who possessed the drugs. They weren't found on Shaquille Carter. They're found in a place where each of the three occupants have equal access to them. Both of the other occupants are drug users. And the guy who supplied the truck, Neil Schicittano, has four drug convictions. Well, he has three that are relatively recent. The 2004 one was, what, 16 years earlier? I don't think we leave that one off the table. I think that was too remote. But he had the current ones, misdemeanor convictions, correct? Misdemeanor possession convictions, yes. Possession. So he was a drug user. That doesn't establish that he's a drug dealer, does it? Well, I want to get back to the- Go back. The fact that he's using racist language and picking up charges helps explain why only Carter could have been charged when the drugs really belonged to Melissa Rulo, Neil Schicittano, or both of them, or were jointly possessed. It also helps explain why the drugs could have been personal use quantities. And this feeds into your question about Neil Schicittano. So he supplies the trucks. He goes into the supposed drug house with Carter. It's his gloves in which the drugs were found. And he's got these other prior convictions. It helps explain why he would have had the knowledge and connections to obtain, possess, and sell drugs. It also helps explain- Doesn't the prior convictions blur the distinction between possession with intent to distribute and simple possession? That's a key distinction here in this case. This case involved- No, but one of the elements is possession with intent to distribute. And if the drugs are for personal use, that element isn't satisfied. This case involved a small amount of drugs. Your argument to the jury was that these quantities of heroin and cocaine-based, 41.8 grams of cocaine-based, were for Schicittano's personal use. That was the defense? One of the defenses is they're not for distribution. They would be a quantity that doesn't satisfy the distribution intent requirement. So this is not a large amount. We're not talking about kilos of cocaine. No, I understand that. Yep. That went to the jury, right, as to whether this was for distribution or- Yep. But both Schicittano and Rouleau are drug users. And there's testimony that a heavy drug user could use as much as 100 bags a day. They only found 290 bags. So if the drugs belonged jointly to Schicittano and Rouleau, or jointly to all of them, it would be very, very difficult for a jury to conclude that this was a distribution quantity. And, again, that in combination with the fact that the drugs weren't found- Are you arguing the evidence was insufficient to prove distribution? And that it never should have gone to the jury on that basis? We are not raising that claim. But had this evidence come in, I think we probably would be making that claim. But here we've got a case where Carter- The drugs aren't found on him. Schicittano provides the truck. He goes into this supposed drug house with Carter. He's got prior drug convictions. And the drugs are found in his gloves. I think the two recent possession convictions, for example, which originated just a month or two prior to the stop, would have directly supported the theory that the drugs weren't Shaquille Carter's and weren't for distribution. But does it actually-I mean, to the extent that it might suggest that Mr. Carter was not-perhaps not the only person in the car, if there's some kind of joint possession or something of that sort, I still am wondering how you get around the idea that the prejudice from this is the only theory that you would have if this information about Schicittano- the amount of drugs is split between the three. It looks less like a distribution amount. I think that's almost exactly-and I see my time has expired, but I'll- It's a very small amount of drugs. And so with the testimony from the government's expert that this is typically not exclusively or always not a drug, not a distribution quantity, but with the government's witness saying only that this is typically not a drug, a distribution quantity, if the drugs are jointly possessed, including among that two drug users, it looks just way less like distribution. Your brief goes into the question of if not Carter, who? Right. And that you wanted to prove that. But that sets up a binary situation. In fact, it doesn't have to be binary. It can be joint, right? It can be both of them. So now we're talking about something else. We're talking about whether the evidence, in effect, was sufficient to establish possession with intent to distribute on the part of anyone. And isn't that a classic jury question? And was that what was presented to the jury? I don't think so. So if the drugs are jointly possessed, remember we have a government expert saying this is only typically a distribution quantity. If the drugs are jointly possessed, it would be extremely difficult for that witness to say, well, we've got two drug users and this third person jointly possessing the drugs. That doesn't look like distribution. That looks like a personal use amount. This is not a large quantity of drugs. Well, the other option here would be, another alternative would be that Carter was the distributor and that the other two were users. And that therefore that explains the possession there and that Carter was responsible for the distribution. To Cititano and maybe to the lawyer. Again, I think if the drugs are jointly possessed, that the quantity, and that's what would distinguish this case from others, the quantity is so small that- How about if it's in the middle of a transaction where Carter and Cititano go into the drug house, they come out, and as a result, Cititano ends up with the drugs. In his gloves. But Carter was part of the distribution. You know, was part of the, effectuated a distribution to him. I mean, weren't all these facts before the jury in which they could reach the decision? No, I don't think- You haven't told me that you haven't argued insufficiency. We did not argue insufficiency. I don't think that the facts were before the jury. I think that's one of the central problems here is that the government was able to present its case. This literally was Shaquille Carter's defense that the drugs weren't his and that these two pieces of information were crucial. They were excluded. We think that was error and the court should reverse. But didn't Carter also tell the arresting officers that the $3,000 was proceeds, his proceeds from drug sales? Marijuana sales. Did that, well- But that would, if that was the case, I mean, this is a drug- Does that remind me, did that come, that came in, right? That came in. This, though, was a heroin and crack cocaine possession case. And he's prosecuting not just for selling or distributing, possessing with intent to distribute those drugs, but with possessing with intent to distribute 28 grams or more of crack cocaine. So that would be a vastly different case. It would, among other things, not involve the five-year mandatory- Before you sit down, one other point that I wanted to address. Apparently, when the offer was made, the proffer was, or you sought to gain the admittance of the prior record of Ciccitano, you argued that under Rule 44B, 404B, right? Yes. And your argument was that it shows his intent to do something, to be a distributor or whatever it is. But that wasn't the complete picture of the argument you're making now, that this is relevant to the defense that you're making, that if it wasn't Carter, it had to be somebody else, and it was Ciccitano. It's just simply a Rule 404B. And the district judge treated it as a routine 404B application, right? That it was coming in, it was a prior bad act, and it was coming in to show intent on the part of Ciccitano. As if it were, same thing would be true of a defendant in a case. I think it's more, the offer was more fulsome than that. I think the, and I'm paraphrasing a little bit, but the offer was, look, his defense is he didn't possess the drugs, and one of these other two people might have, and we're offering this to prove, among other things, Neil Ciccitano's intent, and that's just obviously one of the many available reasons under 404B. I think the judge was wrong in the totality of the pictures and the totality of the situation to simply rely on the intent point. But if the nature of the defense that you're telling me wasn't presented to the judge at the time, then I can't really fault him for that. No, I think it was. I think in both cases, counsel said, look, his defense is he didn't possess the drugs, and Neil Ciccitano, one of the other two individuals in the car, and a major actor, supplies the car, goes into the house, and it's his drugs, gloves in which the drugs are found. He's the obvious other culprit, and under 404B, this is admissible to prove the laundry list, intent, knowledge, and that's what we're saying. It helps prove Neil Ciccitano's intent, his knowledge, his motive for possessing these drugs, and that's the substantive reason for relevance and the reason it was error to exclude it. Thank you. May it please the court. Counsel, I'm Assistant United States Attorney Zachary Stendig, and I represent the United States of America in this matter. Shaquille Carter had a fair trial, and this court should affirm his conviction. The district court did not abuse its discretion. What was the evidence that Carter, as opposed to someone else or some combination of people, possessed these drugs? So the evidence in this case, Your Honor, was that the defendant was sitting in the back of a vehicle. The drugs were recovered from a rear center console next to where the defendant was sitting. The defendant was in possession of $3,000 of United States currency. The defendant also possessed a cell phone, which the parties stipulated belonged to the defendant, and on that phone there was indications of text messages and notes involving the distribution of drugs, specifically the prices of drugs and the type of drugs that were possessed. So turning first to the Detective Mattot disciplinary records, I think it's important to highlight for you the record that was before the district court, which demonstrates that the district court did not abuse its discretion in excluding this evidence, because, as counsel indicated, the issue at trial was which of the three car occupants possessed the drugs that were recovered in the rear. I'm sorry, I know you wanted to address Mattot, but perhaps then you could instead address first the schizotronos and why, as you say, the evidence is who possessed the drugs in the car. And so given that this is his car, he's present, explain why the prior conviction evidence relating to him was properly excluded. Well, Judge, the certificates of conviction were excluded as to Neil Schizotrono. However, during the cross-examination of Special Agent Hoffman, counsel was able to elicit the fact that Neil Schizotrono had prior convictions for drug possession. So the district court excluded the certificates of conviction, those particular documents. That said, defense counsel was able to elicit this information on cross-examination for Neil Schizotrono and for the third passenger. So the third passenger was Melissa Rouleau. What was the nature, and you can paraphrase, what was the nature of the testimony that came out about his prior convictions in general? The nature of the testimony was, the counsel asked, at the time that the vehicle was stopped, did you know that Neil Schizotrono had prior convictions for drug offenses? And the witness answered, no. And then counsel continued, did you later learn that he had those convictions for drug abuse? And the witness said, yes, I later learned that. So the defendant was able to say Neil Schizotrono, on August 21st of 2019, was somebody who had a drug problem. Now, for the third passenger, okay, so you have Carter in the backseat, Schizotrono in the driver's seat, Melissa Rouleau, who was the informant in the driver's seat. During cross-examination of Special Agent Hoffman, counsel was also able to elicit several key facts about her, that she was a drug user as of August 21st of 2019, that she was no longer a DEA informant because of certain things that happened after she was part of the car stop on August 21st of 2019. And in closing, defense counsel was able to argue, look, there's three people in this car. You've got Melissa Rouleau, who's driving the car, who is an informant who can no longer be used by DEA, and who's somebody who has a drug problem, and the agents didn't investigate her. And, in the light most favorable to the government, the jury considered that, and they rejected it in returning the verdict that they did. So, in terms of the question, if not the defendant, then who, despite the district court's exclusion of Neal Schizotrono's certificate of conviction, defense counsel was able to elicit that information and able to use it in their defense, as counsel just conceded. Was the issue, was there a defense that this was just, these amounts for the cocaine base and the heroin were relatively small, and that they could have been for personal use of all three people? Was that part of the defense? Your Honor, I think the defense was that there were numerous defenses. One, that the drugs were not Mr. Carter's. Two, that the law enforcement investigation here was simply insufficient, because there was not sufficient investigation into Schizotrono, into Rouleau, et cetera. And then, regarding the quantity, I believe counsel argued during their closing argument that based on the DEA agent's expert testimony, the 209 glassines could be consistent with the personal use quantity of drugs. And the jury rejected that, Judge. And so, turning back to the record about Neal Schizotrono's certificate of conviction, I think it's very important to point out what was actually, what the record was before the district court. And that's on Joint Appendix Pages 328 and 329. And counsel's explaining his theory of the relevance of why Schizotrono's conviction should be included, and that's that he had some hand in the drug possession on August 21st of 2019. And the district court specifically asks counsel, because the prior convictions suggest he has a propensity towards this sort of offense, and counsel says that, coupled with the fact that there's also testimony that he was an active drug user at the time of August 21st, 2019. So, in that colloquy, the defendant made clear that he was trying to use these certificates of conviction for propensity purposes. But the judge believed that the convictions had probative value because he let him in later. I'm sorry, Your Honor? The judge believed the prior convictions had some evidentiary value because he let him in later. Well, you let in information about the nature of the convictions. You did not let in... Once a jury hears, you know, drug and conviction, you don't have to tell them much more. Well, then, defense counsel is free to argue that in their closings. And it shows that the court didn't err by excluding these certificates because the information ultimately got in. But the point that I'm trying to make, Your Honor, is that when asked why the certificates of conviction specifically needed to come into evidence, the defendant said for propensity purposes, and that's never allowed under 404B. And I think that's a really important distinction here because yet some of the information about the drug possession came in. Well, did it become non-propensity evidence when the judge let it in? What's your – help me understand your reasoning here. I think that when it came in, Your Honor, it came in under the guy's – or excuse me, under a theory that the police investigation into Neal Cicciutano was insufficient because Neal Cicciutano was allowed to leave after the car stop. Police didn't even know that he was a drug user at that time and only found out later that he was a drug user. Was that question objected to? No, it was not, Your Honor. Your point, the point that you just made, was that basically the information is – the evidentiary value of the prior convictions was known to the jury in substance. Yes. By virtue of the fact that they were told that he was a drug user. Yes, Your Honor. So I don't see that in your brief. I thought that that – I don't see that point in your brief there. This came as new information to me. Okay. Well, the colloquy regarding that – or excuse me, the question and answer that I summarized before came during the cross-examination of Special Agent Hoffman. Yeah. And it was on the second day of trial. I don't have the exact joint appendix. I apologize. Okay. All right. So at bottom – But you don't know the page of that in the joint appendix? I'm sorry. I don't know it, Your Honor. We can provide that in a supplemental letter if it would be helpful to the court. Or if you can find it while your opposing counsel is doing your vote. I can, Your Honor. Yes. Thank you. Thank you. At bottom, the district court excluded this evidence about people who did not testify, whether it was Detective Mattat, whose credibility was not at issue at the trial because he did not testify. Can I just ask you – I'm sorry. With regard to Detective Mattat, so if he had testified, your view – is your view that his record would be admissible? It might have been had he testified and his credibility been at issue. I think that it would be – it would invoke 609, right? Because he would then be a witness who's testifying and who the jury has to make a credibility determination about. But 609 is irrelevant here because he did not testify. And, in fact – and I notice that I'm out of time here, Your Honor. May I please continue? Yes. In fact, neither party called him as a witness, and there was no request for a missing witness instruction. And that was something that during closing, defense counsel relied on extensively, which was you didn't hear from Detective Mattat, you didn't hear from Melissa Rouleau, and you didn't hear from Neil Cicciutano. And so, based on this information, the district court's decision to exclude this irrelevant information about witnesses who was not – who did not testify was sound. It was certainly not arbitrary or rational. And this court should affirm the defendant's conviction. Very good. Thanks. Thank you. Much of what the government's response is that Mr. Carter at least had the chance to say this or that. The problem with that argument is that just saying it has no punch. He has a Fifth and Sixth Amendment right to present a complete defense, and this was his defense, these personnel records and the conviction records. It's vastly different. We're going to rule out the 2004, so if you take the 2000, I don't know what year they were, 2018 or something, the more recent ones, why wasn't that information known to the jury and the argument could be made, the same argument could be made? It's vastly different to say someone – to hear someone's a drug user, for example. That covers a wide range of conduct from occasional use to everyday use. It's an admission by the government agent. Plus, the jury knew from the government agent, didn't it, that he had prior drug convictions, not simply that he was a user. So it's vastly different to hear it and then to know that in the months leading up, two months, his most recent convictions originate in May and June of the same year, to know that Neal Schiciotano is picking up drug possession conviction charges in the couple months preceding the case. That's vastly different than just hearing he has a conviction. The jury knows he's a drug user. The jury knows he's got drug convictions. They're not stupid. But, again, it's vastly different to just hear in the abstract. Obviously, from your point of view, the more details, the better. But wouldn't you agree with the substance? I mean, once juries hear, you know, drug user, drug conviction, you look over and their faces change. I don't think so because it includes a wide range from one conviction when you were very young to something more recent. This is not just, these are exactly the drugs that were possessed in the car. And they originated, for example, in May and June, two months, two and three months before this truck stop. That's just a vastly quantitatively different than just knowing in the abstract the witness has a drug conviction or uses drugs. So your argument, your position is the fact that he said he had convictions, Hoffman said he had convictions, was different from saying, and he had one recently, as recent as the most recent one. I'm saying it's quantitatively different. I think it makes a vast difference. And that was what was needed to prove that the drugs weren't someone else's. But it seemed to me, well, you had plenty of arguments that the drugs were Cititano's, that they were in his car and in his glove. In his compartment. In his compartment. In his compartment. And also that he was a user. How did you deal with the phone records? And what about them? Sorry? What about them? Well, I mean, the jury hears the substance of text messages about drug dealing, so that's something that separates Carter from the other two in a significant way, isn't it? I think that's a double-edged sword, because remember, of course, the government didn't preserve Melissa Rulo delegated, and so did TFO Matat delegated the text messages between them. We never got to see those. The jury never got to see those. Some of the cell phone records go both ways. The government made much of the exchange between Carter and Rulo at the traffic stop, where Carter says, I can't go to jail, suggesting that he knew the drugs were there and knew that they were his. I think that's, it's just as. Well, it goes beyond that. It's also Carter saying, don't let them search car. And the reason, and it's that the drugs would be discovered upon a search of the car, and don't let them search the car. So it implies that he knew that there were drugs concealed. Or he knew that he was on supervised release from New York and knew he was violating his conditions just by being in Vermont. It doesn't have to be because he possessed the drugs. It's capable of different interpretations. Let me ask you this. When Rulo says, put it in my purse, I will take, I guess, this. What is she referring to? Everybody assumed it was drugs. Yeah. And that's one of the ways in which. It's these drugs. I think it's one of the ways in which that text doesn't necessarily prove that they were Carter's. That it's equally likely that they were Rulo's or Schicitano's or both. And we know, just so. But that's implausible in the light of the other portions of the text Judge Walker just read. I don't think so. Well, it would be consistent, would it not, with Rulo saying, put it. What's consistent, it seems to me, is Carter, the drugs are, Carter has the drugs. He's in the passenger seat in the back. Put it in my purse, I will take this. And then Rulo says, right side of seat. Probably indicating the purse, where the purse is. Carter says, I don't see it. Don't let them search the car, please. I can't afford to go to jail. Which would be consistent with him putting it in the compartment. In between. I don't know. Isn't that possible? I think it's equally likely that he's just saying, I'm on supervised release. And I don't want to be found in a truck in Vermont. Because that, by itself, is a violation of his conditions. My time has expired. But if I could just note, the prejudice here, I think, is palpable. Because we know the jury actively considered whether the drugs belonged to someone else. Because they asked to hear the exchanges between the detectives in the post-arrest statement. Where they tell him, oh, Melissa took the chart, took responsibility for this. And wanted to see the transcript or the video of the exchange in which the trooper tells Carter the same thing. In short, I think the jury heard the government's case. But it never got to hear and see the evidence supporting Shaquille Carter's case. The district court's rulings excluding the TFO Mattat records and the Schiciatano conviction records was error. Violated Carter's constitutional rights and should be reversed. Thank you. And, yes, were you able to locate the site, Mr. McSherry? Yes, Your Honor. It's at JA 285, page 54 on the right. Thank you.  Thank you.